### Jeffrey, suing for, et al. v. Langston, et al.

(Decided February 26, 1918.)

### Appeal from Calloway Circuit Court.

Headnote.—There is nothing in this opinion worthy of a headnote, but it is a fair sample of hundreds of opinions that we write each year and that are published in the official reports.

A. D. THOMPSON and J. C. SPEIGHT for appellants.

COLEMAN & WELLS for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This is a suit by some of the children of W. A. Fitts, who died intestate in Calloway county in September, 1915, against Della Langston, his married daughter, and R. B. and W. S. Fitts, two of his sons, to set aside a deed made by W. A. Fitts to his daughter, Mrs. Langston. The deed recited that in consideration of love and affection he conveyed to Mrs. Langston about eighty acres of land in Calloway county. R. B. and W. S. Fitts, although they were made defendants in the suit and are named as appellees here, have really no interest in the controversy. We gather from the record that they were made parties defendant because it was believed that through their assistance or influence the deed to Mrs. Langston was procured.

The grounds upon which it is sought to set aside the deed are that W. A. Fitts was mentally incapable of executing it and was persuaded to do so by undue influence exercised over him by Mrs. Langston and her brothers, R. B. and W. S. Fitts.

After the case had been prepared for hearing, the lower court rendered a judgment dismissing the petition.

At the time the deed was made W. A. Fitts was about seventy-five years old and his wife, Mrs. Allie Fitts, seventy.

On February 1, 1913, W. A. Fitts and his wife made a deed conveying the land to Mrs. Langston "during her single life." The wife of W. A. Fitts died in September, 1914, and thereafter W. A. Fitts, becoming dissatisfied with the deed made in February, 1913, and which had never been put to record, got possession of it and changed it so as to convey the land to Mrs. Langston "during her lifetime, then to her heirs." This change was made by erasing in the deed the words "single life" and inserting in their place "lifetime, then to her heirs." After this alteration had been made in the deed, the date of the first signing in February, 1913, and the date of the acknowledgement then taken by a deputy clerk, were changed so as to make the date of the signing by W. A. Fitts and the date of the new acknowledgment July 2, 1915, and on July 3, 1915, the deed was recorded in the proper office.

It appears from the evidence that Mrs. Langston lived with her parents all of her life except for a short while, and after the death of her mother continued to live with

her father until his death, waiting on and giving to them such attention as people of their age and health required. It was to compensate her for this service and attention that the deed was made.

The evidence as to the mental condition of W. A. Fitts is conflicting, some of the witnesses testifying that at the time of the execution of the deeds, he was feeble in mind as well as in body and did not have sufficient mental capacity to understand the nature or quality of his acts; other witnesses testifying that he was fully competent physically as well as mentally to execute both of the deeds at the time they were executed.

It appears that the deed of February 1, 1913, was executed on Sunday, but this is not material because Mrs. Langston does not claim the land under that deed but under the deed made in July, 1915. It is very true that this deed of July, 1915, was simply the old deed reformed to correspond with the wishes of W. A. Fitts at the time it was made and redated to correspond with the date of its new execution. But for all purposes the effect was the same as if the deed now in controversy had originally been written and executed in July, 1915.

It might further be here said, although not important, that there is some question as to whether the deed made in 1913 was delivered to Mrs. Langston, but, as we have said, the deed made in 1913 was, in effect, destroyed and a new deed executed in its place in 1915. There is no evidence that Mrs. Langston in any manner or form influenced, or persuaded, or requested her father to execute either of the deeds or procured any one else to influence or persuade him to make either of them. It seems that Mr. Fitts and his wife decided between themselves to make the first deed and it was written according to their wishes, there being nothing secret about its execution, as two and probably three of the children other than W. S. and R. B. Fitts and Mrs. Langston were present when the first deed was written, signed and acknowledged. Nor was there any secrecy or concealment about the execution of the last deed, nor does the evidence show that W. S. or R. B. Fitts influenced or persuaded W. A. Fitts to make either of the deeds. We may, therefore, safely say that there is no evidence of undue influence in the record.

As to the mental capacity of W. A. Fitts, there is, as we have said, some conflict in the evidence, but the weight

of it shows that he was capable of executing the instrument and that it was his free and voluntary act.

Wherefore, the judgment is affirmed.